Annick M. Persinger (CA Bar No. 272996)
**TYCKO & ZAVAREEI LLP**
10880 Wilshire Blvd. Suite 1101
Los Angeles, CA 90024
(510) 254-6808
*apersinger@tzlegal.com*

*Counsel for Plaintiffs and Class*

[Additional Counsel listed on Signature Page]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| FRANKLIN MCINTYRE, MELISSA NULL, CHRISTINA REGNIER, AND CRYSTAL SMITH, *on behalf of themselves and all others similarly situated*, <br><br> Plaintiffs, <br><br> v. <br><br> AMERICAN HONDA MOTOR CO., INC., a California corporation, <br><br> Defendant. | Case No.: 2:23-cv-7024 <br><br> **CLASS ACTION** <br><br> **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

CLASS ACTION COMPLAINT

All allegations made in this Complaint are based upon information and belief except those allegations that pertain to Plaintiffs, which are based on personal knowledge. Each allegation in this Complaint either has evidentiary support or, alternatively, pursuant to Rule 11(b)(3) of the *Federal Rules of Civil Procedure*, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

## I.     NATURE OF THIS ACTION

1.     Plaintiffs bring this proposed class action for damages and injunctive relief on behalf of themselves and all other persons and entities nationwide who purchased a 2019-2023 Acura RDX vehicle (the "Vehicles" or "Class Vehicles") manufactured by defendant American Honda Motor Co., Inc. ("Honda" or "Defendant").

2.     The Vehicles are equipped with a defective rear windshield with electrical defroster that causes the rear windshield glass to spontaneously shatter or break with no external impact. *See* images[1] below:



---

[1] These images are screenshots taken from a video of the no-impact shattering happening in real time. Available at https://www.youtube.com/watch?v=xnZeeBkruPY.



3.      According to Defendant, the spontaneous shattering of the Vehicle's rear windshield is caused by an "incorrect specification for the rear defroster grid."[2]

4.      Automobile windows (including rear windshields) play a vital role in the Vehicles' occupant protection system by helping protect occupants from full- and partial-ejection during normal vehicle operation as well as crashes. Windows also serve as an important barrier separating occupants from weather elements, dust, debris, and other outside objects that could otherwise intrude into the passenger compartment and jeopardize the operator's ability to control the Vehicle. Windows also prevent small children and pets from exiting the Vehicles when the Vehicles are in motion, and secure occupants and occupants' personal property from intruders, thieves, and other ill-intentioned persons.

5.      These rear windshield failures occur without warning, when the motor is off or running, and when the Vehicles are still or travelling at speed.

6.      If a rear windshield fails when the Vehicle is travelling at speed, the resulting noise can startle the driver and cause him or her to panic and swerve dangerously. Vehicle owners who have experienced rear windshield failure while driving may confuse the loud crashing noise with the impact of another vehicle or with gun fire.

---

[2]    *Acura Service Bulletin 22-014* (October 28, 2022), *available at* https://www.tsbsearch.com/Acura/22-014 and attached hereto as Exhibit A.

7. As documented by widespread consumer complaints, this defect has plagued the current generation of RDX Vehicles since its launch.

8. Defendant has known about the propensity of its rear windshields to spontaneously shatter for years. At least as early as 2020, Defendant received reports from consumers, the National Highway Traffic Safety Administration ("NHTSA"), and its own dealerships that the Vehicles' rear windshields were spontaneously shattering under normal operating conditions.

9. Yet Defendant failed to disclose and actively concealed the Vehicles' rear windshield defect from the public, and continues to manufacture, distribute, and sell the Vehicles without disclosing the defect.

10. The existence of this defect is a material fact that a reasonable consumer would consider when deciding whether to purchase a Vehicle.

11. Had Plaintiffs and the putative class members known of the rear windshield defect, they would have paid less for the Vehicles or would not have purchased them.

12. Reasonable consumers, like Plaintiffs, expect that a vehicle's rear windshield is safe, will function in a manner that will not pose a safety risk, and is free from defects.

13. Plaintiffs and the putative class members further reasonably expect that Defendant will not sell vehicles with known safety defects, such as the defective rear windshield, and will disclose any such defects to its consumers when it learns of them.

14. Plaintiffs bring this action for breach of implied warranty on behalf of a nationwide class of Vehicle purchasers. Plaintiff McIntyre further asserts claim for violation of Alabama's Deceptive Trade Practices Act, Ala. Code §§ 8-19-1, et seq., on behalf of a subclass of purchasers of 2022-23 Acura RDX vehicles. Plaintiffs seek damages and equitable relief on behalf of themselves and all others similarly situated.

## II.    JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d)(2), as amended by the Class Action Fairness Act of 2005, because the amount in controversy exceeds

$5,000,000, exclusive of interests and costs, and because this is a class action in which the members of the classes and Defendant are citizens of different states.

16.     Venue is proper in this judicial district under 28 U.S.C. § 1391 because Defendant is a resident of Torrance, California, which is located in this district.

### III.     PARTIES

**A.     Franklin McIntyre (Alabama)**

17.     Plaintiff Franklin McIntyre is an Alabama citizen residing in Jackson, Alabama.

18.     Plaintiff McIntyre purchased a new 2023 Acura RDX on November 30, 2022 from Joe Bullard Acura in Mobile, Alabama.

19.     On May 4, 2023, Plaintiff McIntyre's wife drove the Vehicle to work and parked it in her employer's parking lot. But when she returned to the Vehicle she noticed that the rear windshield had shattered. There was no evidence of external impact. Rather, all evidence suggested it simply shattered.

20.     Plaintiff McIntyre subsequently called the dealer, Joe Bullard Acura. The dealer told him that the damage to the rear windshield was not covered under the warranty.

21.     Accordingly, Plaintiff McIntyre was forced to take his Vehicle to Paul's Discount Glass & Tire, Inc. and pay $588.50 out-of-pocket to replace the rear windshield.

22.     Prior to purchasing the Vehicle, none of the representations received by Plaintiff McIntyre contained any disclosure relating to any defect in the rear windshield. Had Defendant disclosed that the rear windshield in the Vehicle was defective, posing a safety risk, Plaintiff McIntyre would not have purchased it, or would have paid less for the Vehicle.

23.     Plaintiff McIntyre has suffered an ascertainable loss as a result of Defendant's wrongful conduct associated with the rear windshield defect including, but not limited to, out-of-pocket costs to replace the rear windshield and the diminished value of the Vehicle.

**A.     Christina Regnier (California)**

24.     Plaintiff Christina Regnier is a California citizen residing in Los Angeles County, California.

25.     Plaintiff Regnier purchased a new 2019 Acura RDX on November 28, 2019 from Cerritos Acura in Cerritos, California.

26.     On or about April 10, 2023, Plaintiff Regnier was driving her Vehicle at highway speeds when her rear windshield spontaneously shattered. At the time of failure, Plaintiff Regnier was speaking to a friend on her mobile phone and both described the resulting noise as an "explosion." There was no evidence of external impact. Rather, all evidence suggested it simply shattered.

27.     Plaintiff Regnier subsequently called Cerritos Acura, who directed her to contact Acura customer care. When Plaintiff Regnier subsequently called Acura customer care, she was told that there was no known rear windshield defect with Acura RDX Vehicles and that there was no recall for the Vehicles related to window shattering.

28.     Prior to purchasing the Vehicle, none of the representations received by Plaintiff Regnier contained any disclosure relating to any defect in the rear windshield. Had Defendant disclosed that the rear windshield in the Vehicle was defective, posing a safety risk, Plaintiff Regnier would not have purchased it, or would have paid less for the Vehicle.

29.     Plaintiff Regnier has suffered an ascertainable loss as a result of Defendant's wrongful conduct associated with the rear windshield defect including, but not limited to, out-of-pocket costs to replace the rear windshield and the diminished value of the Vehicle.

**B.     Crystal Smith (Maryland)**

30.     Plaintiff Crystal Smith is a Maryland citizen residing in Nottingham, Maryland.

31.     Plaintiff Smith purchased a 2019 Acura RDX in January 2020 from Acura of Ellicott City in Maryland.

32.     On the morning of February 11, 2023, Plaintiff Smith came outside to find that the rear windshield of her Vehicle had shattered. There was no evidence of external impact. Rather, all evidence suggested it simply shattered.

33.     Plaintiff Smith paid a $150 deductible to replace the rear windshield.

34.     After the rear windshield was replaced, Plaintiff Smith started experiencing a tailgate lift alert and contacted AutoNation Acura Hunt Valley in Cockeysville, Maryland. The dealer told her

it was going to cost her $360 for two hours of labor to repair the Vehicle. However, the dealer ultimately determined that the tailgate was fine but there was glass caught in the hatch and suggested she take the Vehicle to a body shop to and clean it out.

35.     The dealer told Ms. Smith there is no recall so she would have to open another claim with her insurance company. Plaintiff Smith has not opened a second claim with her insurer because she does not believe she should have to pay the deductible since it was not her fault that the rear windshield shattered.

36.     Prior to purchasing the Vehicle, none of the representations received by Plaintiff Smith contained any disclosure relating to any defect in the rear windshield. Had Defendant disclosed that the rear windshield in the Vehicle was defective, posing a safety risk, Plaintiff Smith would not have purchased it, or would have paid less for the Vehicle.

37.     Plaintiff Smith has suffered an ascertainable loss as a result of Defendant's wrongful conduct associated with the rear windshield defect including, but not limited to, out-of-pocket costs to replace the rear windshield and the diminished value of the Vehicle.

**C.    Melissa Null (Texas)**

38.     Plaintiff Melissa Null is a citizen of Texas residing in Euless, Texas.

39.     Plaintiff Null purchased a 2020 Acura RDX in August 2019 from Goodson Acura located in Dallas, Texas.

40.     The rear windshield of Plaintiff Null's Vehicle shattered on January 13, 2022, when Plaintiff Null entered the Vehicle and shut the driver's door. There was no evidence of external impact. Rather, all evidence suggested it simply shattered.

41.     Later in the day, Plaintiff Null drove the Vehicle to Vandergriff Acura located in Arlington, Texas who told her that the damage was not covered under warranty.

42.     Accordingly, Plaintiff Null took the Vehicle to Safelight and paid $543 out-of-pocket to replace the rear windshield.

43.    Plaintiff Null has suffered an ascertainable loss as a result of Defendant's wrongful conduct associated with the rear windshield defect including, but not limited to, out-of-pocket costs to replace the rear windshield and the diminished value of the Vehicle.

**B.    Defendant American Honda Motor Company, Inc.**

44.    Defendant American Honda Motor Company, Inc. is a California corporation, and is a North American subsidiary of Honda Motor Company, Ltd. Defendant is headquartered in Torrance, California and maintains central operations in California.

45.    Defendant first opened in the United States as a storefront selling Honda motorcycles in Los Angeles, California in 1959. By 1968, Defendant had sold its millionth motorcycle. Starting in 1969, Defendant began marketing and selling automobiles, with its operations still centered in California.

46.    By 1991, Defendant added production to its U.S. operations and oversaw all aspects of production, including research and development, from its headquarters in California. As a center point of Honda's global operations, Defendant made nearly $2 billion in capital investments in California and exported hundreds of millions of dollars in vehicles and other technology from its exclusive port facilities on the West Coast, at Port Hueneme, California, in 2015.

47.    In 1986, Defendant created its first luxury name marque, Acura. By 2006, Defendant established research and development facilities dedicated solely to its vehicles in Torrance, California with related facilities emerging in subsequent years dedicated solely to the creation of "future Honda and Acura automobile and mobility design concepts" in downtown Los Angeles, California.[3]

48.    From its headquarters in Torrance, Defendant combines product sales, service, and coordinating functions for Honda in North America, and is responsible for the manufacture, development, distribution, marketing, sales, and servicing of Acura-brand automobiles. The decisions regarding the marketing and sale of the Vehicles' rear windshields and decisions regarding the

---

[3] *Honda R&D Americas Opens New Advanced Design Studio in Downtown Los Angeles*, Honda (Nov. 28, 2012), https://hondanews.com/en-US/releases/honda-r-d-americas-opens-new-advanced-design-studio-in-downtown-los-angeles.

disclosure or non-disclosure of the defect were in whole or substantial part made by Defendant in California and were purposefully emanated by Defendant in California.

49.    In this Complaint, when reference is made to any act, deed, or conduct of Defendant or Honda, the allegation means that Defendant engaged in the act, deed, or conduct by or through one or more of its officers, directors, agents, employees, or representatives who was actively engaged in the management, direction, control, or transaction of the ordinary business and affairs of Defendant.

50.    Honda sells cars in part via communications that it authorized its dealers to make about Honda vehicles, including the defective Vehicles discussed herein. This includes authorizing Honda dealers to distribute brochures and other marketing and promotional materials. Honda, through its authorized dealers, has and had the opportunity to disclose all material facts relating to the defective Vehicles.

51.    Authorized Honda dealers are Honda's agents, such that an opportunity to receive information from an authorized Honda dealership is an opportunity to receive information directly from Honda itself. *See Daniel v. Ford Motor Co*., 806 F.3d 1217, 1226 (9th Cir. 2015). This agency relationship is established by the fact that, among other things: Honda's Acura logo is displayed at authorized dealerships; Honda issues technical bulletins and service instructions to dealerships detailing potential vehicle problems; Honda distributes various advertising and promotional materials to its dealerships, including brochures, booklets, and pamphlets; and under the terms of its express warranty, Honda requires its customers to return to its authorized dealerships for warranty repairs.

52.    Furthermore, Honda's relationship with its dealerships is governed by a dealership agreement that imposes a number of reciprocal obligations on both parties. An example of such a Honda Automobile Dealer Sales and Service Agreement ("Dealership Agreement") is attached as Exhibit B hereto.[4] Among other things, it requires:

- that Honda offer to dealers "general and specialized product information and . . . field sales personnel to advise and counsel Dealer's sales organization on sales-related

---

[4] Although Exhibit B is an example of Defendant's dealership agreements with authorized dealers of Honda-brand vehicles, Plaintiffs allege upon information and belief that Defendant's agreements with Acura-brand dealers contain substantially similar provisions.

subjects such as merchandising, training and sales management," (Dealership Agreement § 10.2.A), as well as "general and specialized service and parts training courses" (*id.* § 10.2.B);

- that Honda make available to dealers: (1) "sample copies of building layout plans or facility planning recommendations, including sales, service and parts space and the placement, installation and maintenance of recommended signs[,]" as well as, "from time to time," (2) "representatives . . . to counsel and advise Dealer and its personnel in connection with Dealer's planning and equipping of the Dealership Premises" (*id.* § 10.3);

- that Honda make available "such sales, service and parts manuals, brochures, special service tools, parts displays, and equipment and other data for Honda Products as American Honda deems necessary for Dealership Operations" (*id.* § 10.4);

- that Honda "agrees to maintain a nationwide system of authorized Dealers of Honda Products" and that, "[i]n order that those authorized Dealers may be assured of the benefits of comprehensive advertising of Honda Products," Honda agrees to "establish and maintain general advertising programs in such manner and amount as it may deem appropriate and will make sales promotion and campaign materials available" to dealers (*id.* § 10.5)

- that dealers "promote and sell, at retail to the end user, Honda Products . . . , and promote and render service to the end user," and "provide sales and service of Honda Products within the Dealer's Area of Statistical Analysis at levels as reasonably determined by American Honda" (*id.* § 12.1);

- that dealers "agree[] to establish and maintain an adequate and trained sales, parts and service organization" that includes a "Dealership Manager," "a qualified and on-site Honda-trained service manager, a qualified an on-site Honda-trained parts manager and a number of competent service and parts personnel" who shall "regularly attend and

meet the current minimum level of required training provided by American Honda" (*id.*
§ 12.3);

- that dealers "agree[] to acknowledge, investigate and resolve satisfactorily all complaints received from customers and/or owners of Honda Products in a prompt, courteous and businesslike manner, in order to secure and maintain the goodwill of the public" and to "promptly report[]" to Honda "[a]ny complaint received by Dealer which . . . cannot be remedied" (*id.* § 13.1);

- that dealers "will follow all reasonable directives and suggestions, and the Policies and Procedures" made by Honda, and that "[a]ll written directives, suggestions, Policies and Procedures contained in any of its bulletins, manuals, or other written or electronic communication . . . which are in effect as of the date of the Dealer Agreement or are issued thereafter, will be deemed a part of [the Dealership Agreement]" (*id.* § 12.9);

- that dealers will "perform any and all warranty, campaign, recall, product-improvement or product-update service in compliance with instructions and directives issued by American Honda, regardless of where (or from which U.S. Honda Dealer) the Honda Product involved was purchased," and that "[t]o protect and maintain the goodwill and reputation of Honda Products and the Honda Trademarks," dealers "agree[] that [they] will not charge any customer for warranty service or any work done in connection with such warranty, campaign, recall, product improvement or update, or any other service for which Dealer is to be reimbursed by American Honda . . . ." (*id.* § 12.12);

- that dealers "understand[] and agree[] that the only warranties that will be applicable to Honda Products will be such written warranty or warranties as may be furnished by American Honda." The same provision states: "Except for its express liability under such written warranties, American Honda neither assumes nor authorizes any other person or party . . . to assume for it any other obligation or liability in connection with any Honda Product or component thereof" (*id.* § 14.1);

- that dealers "agree[] that [they] will expressly incorporate any warranty furnished by American Honda with a Honda Vehicle as a part of each order form or other contract for the sale of such Honda Vehicle by Dealer to any buyer," "agree[] that [they] will deliver to the buyer of all Honda Products, at the time of delivery of such Honda Products, copies of such applicable warranties as may be furnished by American Honda," and "agree[] to abide by and implement in all other respects American Honda's warranty procedures in effect at the time of Dealer's sale" (*id.* § 14.2);

- that dealers "agree[] to develop and actively utilize sales, parts and service programs for the advertisement, promotion and servicing of Honda Products." The provision further states: "Such programs will include the prominent display and use or demonstration of Honda Products. Dealer further agrees to cooperate with all reasonable promotional programs developed by American Honda" (*id.* § 15.1);

- that dealers "agree[] that [they] will not advertise, promote or trade in Honda Products or the servicing thereof in such a manner as to injure or be detrimental to the goodwill and high-quality image and reputation of American Honda or the Honda Trademarks." The provision further states: "Dealer further agrees that it will not publish or otherwise disseminate any advertisement or announcement or use any form or medium of advertising which is objectionable to American Honda. Dealer agrees to discontinue immediately any advertisement or form of advertising deemed objectionable upon request of American Honda" (*id.* § 15.2);

- that dealers "agree[] to erect and maintain, at the Authorized Location . . . authorized product signs as required by American Honda . . . as well as such other authorized signs as are necessary to advertise the Dealership Operations effectively, and as are required by American Honda" (*id.* §15.4);

- that dealers "agree[] that American Honda has the exclusive right to use and to control the use of the Honda Trademarks and, but for the right and license granted by [this

Dealership Agreement] to use and display the Honda Trademarks, Dealer would have no right to use the same" (*id.* § 16.1);

- that dealers are "granted the non-exclusive right and license to use and display the Honda Trademarks at the Dealership Premises and in connection with advertising for the Authorized Location." The provision further states: "Such use or display is limited to that which is necessary in connection with the sale, offering for sale and servicing of Honda Products at retail at the Authorized Location . . . . Dealer agrees that it will promptly discontinue the use of any of the Honda Trademarks, or change the manner in which any of the Honda Trademarks are used when requested to do so by American Honda" (*id.* § 16.2);

- that dealers "agree[] to keep complete and current records and to promptly prepare for American Honda such reports, based on such records, as American Honda may reasonably request pursuant to the Policies and Procedures." The provision further states: "All records required to be maintained by Dealer pursuant to [this Dealership Agreement] shall be kept in such manner and format so as to be readily accessible, retrievable and reproducible by Dealer for review and audit by American Honda . . . ." (*id.* § 17.3);

- that dealers "agree[] to permit, during reasonable business hours, American Honda, or its designee, to examine, audit, reproduce and take copies of all reports, accounts and records pertaining to the sale, servicing and inventorying of Honda Products, including, but not limited to, records in support of claims for reimbursement or credit from American Honda, and, with the prior approval of Dealer, which approval will not be unreasonably withheld, to interview Dealer employees with respect thereto . . . ." (*id.* § 17.4);

- that the Dealership Agreement may be terminated if the dealer fails "to perform adequately as to its advertising and promotional responsibilities" or its "sales service, parts or customer satisfaction responsibilities" as "determined by American Honda" (*id.*

§§ 20.4N-O). The Dealership Agreement further provides that "not later than the effective date of the termination of the Dealer Agreement, Dealer[s] will, at [their] sole expense, discontinue any and all uses of any Honda Trademarks and any words, symbols and marks which are confusingly similar thereto; will remove all signs bearing any Honda Trademark; and will destroy all stationery, repair orders, and advertising and solicitation materials, and all other printed matter bearing any Honda Trademark or referring directly or indirectly to American Honda or Honda Products in any way which might make it appear to members of the public that Dealer is still an authorized Dealer. The foregoing will include, but not be limited to, discontinuing the use of any Honda Trademark as part of Dealer's business and corporate name. Dealer will also deliver to American Honda, at American Honda's place of business, or to a person designated by American Honda, or will destroy the same upon request by American Honda, any and all technical service or parts literature, and advertising and other printed material then in Dealer's possession which relates to Honda Products and which was acquired or obtained by Dealer from American Honda. Dealer will destroy any sign bearing a Honda Trademark which has not been repurchased by American Honda" (*id.* § 21.3).

## IV.    FACTUAL ALLEGATIONS

### A.    The Rear Windshield Defect

53.    Honda manufactures, markets, and distributes mass produced automobiles in the United States under the Acura brand name.

54.    The Acura RDX is a perennial top seller in the premium compact SUV segment with cumulative U.S. sales exceeding 623,000 units since its debut in 2006.[5]

55.    The current, third generation of the Acura RDX was released in June 2018 (2019 model year).

---

[5] *Acura RDX US Sales Figures*, CarFigures (updated Aug. 2, 2023), https://carfigures.com/us-market-brand/acura/rdx.

56.     The Vehicles are mid-sized SUVs equipped with a standard rear gate that includes a rear windshield.

57.     The rear windshield includes an electrical defroster grid that can be used to heat the rear windshield.

58.     Since its debut, the third generation RDX has suffered an unprecedented number of spontaneous rear windshield failures.

59.     On June 10, 2022, after nearly two years of receiving a consistent barrage of NHTSA complaints, online complaints, warranty claims, and other various notices, Defendant finally released a "Service Bulletin" announcing that all 2019 model year RDXs and certain 2020 model year RDXs suffered from a defect that caused the rear windshield glass to shatter or break "with no external impact."[6]

60.     The June 10, 2022 Service Bulletin identified the cause of the spontaneous rear windshield glass shattering as an "[i]ncorrect specification for the rear defroster grid."[7]

61.     Yet Defendant's fix, as Defendant stated in the Service Bulletin and directed dealerships to undertake, is simply to replace defective windshields with equally defective windshields. Indeed, the Service Bulletin calls for replacement of the defective windshield with another of the same part number. This "fix," however, does not actually cure the fundamental issue, as evidenced by Vehicle owners experiencing multiple rear windshield shatters.

62.     As discussed, the rear windshield plays a critical role in modern vehicles. Yet Vehicle owners are being forced to drive dangerous and unsafe Vehicles with rear windshields that can spontaneously shatter at any given moment, even if the windshield had already been "repaired" by Defendant pursuant to its Service Bulletin.

---

[6]   *Acura Service Bulletin 22-014* (June 10, 2022), *available at* https://static.nhtsa.gov/odi/tsbs/2022/MC-10215489-0001.pdf. The June 10, 2022 Service Bulletin, entitled 22-014 Rear Windshield Glass Shattering, was amended on October 28, 2022 to change the range of VIN numbers of Vehicles in model year 2020 that were affected by the defect. *See* Exhibit A.

[7] *Acura Service Bulletin 22-014* (June 10, 2022), *supra* note 6.

**B.    Defendant Knew of the Defect Before Plaintiffs Purchased the Vehicles.**

63.    Defendant has long known or should have known of the Vehicles' rear windshield problems from multiple sources. These sources include pre-release design, manufacturing, and testing data; warranty claims data; consumer complaints made directly to Defendant, collected by NHTSA and/or posted on public online forums; testing done in response to those complaints; aggregate data and complaints from authorized dealers; and other sources. Yet, Defendant failed to disclose and actively concealed the Vehicles' rear windshield defect from the public, and continued to manufacture, distribute, and sell the Vehicles. Defendant continues to fail to disclose and actively conceals this defect from consumers prior to purchase.

**1.    Pre-Release Design, Manufacturing, and Testing Data**

64.    It is standard practice for automobile manufacturers to engage in extensive pre-launch testing of their vehicles. Honda did so for the defective Vehicles and tested the rear windshields and defrosters before selling the defective Vehicles.

65.    Given the immediacy and frequency of consumer complaints about the shattering of the rear windshields in the defective Vehicles, it is apparent that Honda likely learned about the rear windshield defect prior to putting the Vehicles up for sale.

**2.    Warranty Claims Data**

66.    Honda also knew or should have known about the rear windshield defect based on the large number of warranty repairs related to rear windshield repairs.

67.    Upon information and belief, Honda regularly compiles and analyzes detailed warranty service information regarding repairs performed under warranty at its network of dealerships. Indeed, Honda requires dealers to maintain detailed and meticulous records for any warranty repairs performed and routinely refuses to pay for warranty repairs made where the nature and cause of the malfunction is insufficiently described.

68.    Upon information and belief, these dealer service records and warranty data reflect an abnormally large spike in shattering rear windshields for the Vehicles.

69.    The complete warranty repair data regarding the rear windshield's repeated failures put Honda on notice of the defect.

### 3.    Complaints Made Directly to Honda

70.    Honda also knew or should have known of the rear windshield defect based on the numerous complaints it received directly from customers. The large number of complaints, and the consistency of their descriptions of the rear windshield failures, alerted Honda of the defect.

71.    Only Defendant has access to the full universe of complaints it received regarding the Vehicles' spontaneously shattering rear windshields. However, upon information and belief, many Vehicle owners who experienced the defect complained to Honda. The large number of complaints should have alerted Defendant to the defect.

### 4.    Complaints Collected by NHTSA

72.    Vehicle manufacturers are required by federal law to maintain close contact with the NHTSA regarding potential safety defects. By law, manufacturers are required to report information regarding customer complaints and warranty claims to NHTSA, and federal law imposes criminal penalties against manufacturers who fail to disclose known safety defects. *See generally* Transportation Recall Enhancement, Accountability, and Documentation (TREAD) Act, Pub. L. No. 106-414, 114 Stat. 1800 *et seq.* (2000).

73.    Automakers have an affirmative legal duty to disclose emerging safety-related defects to the NHTSA under the Early Warning Reporting requirements. *Id.*

74.    Vehicle manufacturers should and do monitor NHTSA databases for consumer complaints as part of their ongoing obligation to uncover and report potential safety-related defects. Accordingly, Honda knew or should have known of the many complaints about the shattering rear windshields lodged with the NHTSA, and the sheer number of complaints coupled with their consistency alerted or should have alerted Honda to the defect.

75.    A sampling of the complaints posted on the NHTSA database include the following:

- "GOT IN DRIVER SEAT CLOSED THE DOOR AND THE REAR WINDOW SHATTERED NO PRIOR DAMAGE TO WINDOW. IT WAS PARKED IN THE DRIVEWAY" NHTSA ID Number: 11384857. Incident Date December 24, 2020.

- "TL* THE CONTACT OWNS A 2020 ACURA RDX. THE CONTACT STATED WHILE THE VEHICLE WAS STATIONARY AND WHILE SCRAPING ICE OFF

THE REAR HATCH WINDSHIELD, THE WINDSHIELD FRACTURED. THE VEHICLE WAS TAKEN TO JOE RIZZA ACURA (8150 W 159TH ST, ORLAND PARK, IL 60462) WHERE IT WAS DIAGNOSED WITH THE REAR HATCH WINDSHIELD NEEDED TO BE REPLACED. THE DEALER INFORMED THE CONTACT THAT THIS WAS A DESIGN DEFECT AND REPLACED THE HATCH DOOR AND THE WINDSHIELD. THE CONTACT STATED THAT THE WINDSHIELD WAS REPLACED, BUT THERE WAS STILL PIECES OF BROKEN GLASS LEFT INSIDE THE HATCH." NHTSA ID Number: 11403144. Incident Date February 15, 2021.

- "Car was parked in the garage[.] [W]oke up in the morning found my car back window glass shattered" NHTSA ID Number: 11447614. Incident Date November 21, 2021.

- "When closing driver side door, rear window shattered and blew out." NHTSA ID Number: 11447414. Incident Date December 20, 2021.

- "My rear windshield popped while my car was parked in my workplace without hitting any thing on it . i read on line lots of owner for Acura had a same problem." NHTSA ID Number: 11446462. Incident Date December 22, 2021.

- "Rear windshield shattered while parked in my drive way. Vehicle was not being driven. I have read several reports of this happening to other Acura rdx. I have contacted the dealership and Acura who have both told me I need to pay out of pocket to get this fixed. This is an Acura problem and Acura was unable to help. I should not be responsible for getting this fixed as vehicle was in driveway when this happened. I have been without a vehicle since this happened on 12/24. I'm very unsatisfied with Acura." NHTSA ID Number: 11445399. Incident Date December 24, 2021.

- "Rear glass window shattered out of nowhere. Thankfully the car was parked when it happened. It's bound to happen on these cars and when reported to Acura they did nothing. My car was parked in front of my house all night with a camera recording it and there was nothing else that could've happened to it. Also, when inspected, you can

tell the glass was not impacted in anyway. It shattered from the inside out. There was no warning lights or anything prior to the incident. On a side note, I believe this problem is covered under warranty in Canada but not in the US, which means Acura knows about the problem but isn't doing anything about it here." NHTSA ID Number: 11498858. Incident Date December 25, 2021.

- "Rear window spontaneously exploded while opening my door to enter. There are no replacement glass available from Acura, I am forced to drive with plastic and duct tape covering my rear window. Acura denies there is a problem/ that hey are at fault. The are currently daily posts on the 3rd Gen Acura RDX Facebook group of owners rear window spontaneously exploding. This has been a know issue with owners since 2019, however the frequency of the rear glass exploding has increased dramatically." NHTSA ID Number: 11447734. Incident Date January 4, 2022.

- "I opened my driver's side door and sat down when I heard a crack sound. I turned around and heard a louder crack sound and saw my back window was shattered. I called Acura twice and spoke to two different agents and both stated they never heard of this happening nor were there any bulletins about this being an issue. I called three Acura dealerships near me and all three stated they have never heard of this issue even though I've heard of this happening multiple times in my Acura owners group discussions. The last dealership I spoke with asked for me to drive it to them so they could see it. While driving there the glass just continued to drop inside my cargo trunk. The dealership is supposed to be checking with their district manager tomorrow but didn't sound optimistic. They did check with parts and the rearview glass is on backorder with no ETA and other Acura owners have been waiting months to get theirs replaced. I feel this is a much bigger issue and is a defect in the design of this model based on what I've heard and have now experienced firsthand." NHTSA ID Number: 11447429. Incident Date January 13, 2022.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- "Back windshields have been spontaneously shattering. Sitting in my car parked for 20 minutes waiting for my son and the back window shattered…all the edges with a strange crack and the glass appeared shattered…ran my hand across it and cut my finger. People that came over to the car had me lift the hatch and the center of the window fell in. I joined an RDX owner Facebook page and it seems like this is happening to a lot of people." NHTSA ID Number: 11447941. Incident Date January 13, 2022.

- "Back windshield spontaneously shattered[.]" NHTSA ID Number: 11447607. Incident Date January 13, 2022.

- "As normal I remote started my vehicle. Walked over to my vehicle opened my driver door and closed it normal[.] [A]ll of a sudden my rear window shattered!" NHTSA ID Number: 11447486. Incident Date January 13, 2022.

- "Rear windshield spontaneously shattered while car was idle. Seems to be a common issue especially in the cold. Outside temp was about 20F when it happened." NHTSA ID Number: 11451524. Incident Date January 27, 2022.

- "The rear windshield shattered unexpectedly while the car was parked. Seem that others might be having the same issues." NHTSA ID Number: 11449891. Incident Date January 30, 2022.

- "The rear hatch window unexpectedly blows out and shattered glass, without warning. No impact involved." NHTSA ID Number: 11449822. Incident Date January 30, 2022.

- "I got in my vehicle, closed the driver door and heard a loud 'pop' followed by the sound of glass falling. Turned around and saw a giant hole in the middle of my rear windshield. Got out to investigate and noticed the rear window was completely shattered all the way to the edges of the glass. There are multiple reports of this happening and yet Acura USA refuses to acknowledge it. Instead, forcing us to file an insurance claim when in fact this is faulty glass, and should be covered by Acura. It's 2022, a simple google search will show how common this issue has become. Acura

needs to be held accountable and something needs to be done about this immediately." NHTSA ID Number: 11451772. Incident Date January 31, 2022.

- "Opened my Acura RDX car door, sat down, closed the door - and then my rear windshield shattered and collapsed into my trunk. I knew of no damage to it - the car is a 2020, relatively new - This incident caught me my complete surprise. Searched on internet, and see similar complaints from other Acura owners about exploding rear windshields after closing driver side door." NHTSA ID Number: 11450324. Incident Date February 1, 2022.

- "On the date of the incident, I remotely started my car from the office before leaving for the day. I got into my vehicle shut the door, started the vehicle (push start), and heard a loud sound that sounded like a gunshot and something shattering. I looked around my surroundings and noticed my rearview window was shattered. The rear window had a large hole slightly just above the rear wiper. I immediately went back into the office to tell one of my co-workers what occurred. My co-worker assisted me with cleaning up the glass and securing the window to get home safely. After arriving home, I called to report the incident to my insurance company and was advised to follow-up the next morning. Later that night I discovered this has been occurring with multiple Acura RDX vehicles in the US and Canada. The next morning I immediately called Rosenthal Acura to report the incident to my service advisor. I asked him if Acura was aware of this occurring with other vehicles. I was told he was aware this occurred with another vehicle but, I was told the corporate office has not made the dealership aware of this occurring with any other vehicles. As a result, it was suggested that I report the incident to my insurance provider. This appears to be an issue with multiple 2019-2021 Acura RDX drivers in the US and Canada. The Canadians appear to be acknowledging the issue and fixing the vehicles. The US needs to protect the consumers and immediately recall and inspect these vehicles. Some drivers are reporting this incident occurring on multiple occasions. I am grateful this did not happen while I was

driving home. The idea of glass shattering while driving could be dangerous for the driver, passengers, and others on the highway. This is a safety problem that needs to be immediately addressed." NHTSA ID Number: 11450222. Incident Date February 1, 2022.

- "I would like to filed a safety issue dues shatter rear window on my 2019 Acura RDX. Around 1:47 pm on 2/2/2022 I got in my car and start it up and I hear a pop I look back to see what was going on then noticed my rear window was shatter I then got out off the car to inspect what was going on I didn't not see any Visual impact and item that could damage or shatter my rear window. The temperature at that time was mid 51 degrees and the rear defrost was not active. I have recording and pictures to prov[ide] as evidence if need. I believe my car is not the only one with this happening there lots in this particular make and model are having the same issue. This happened at my work parking lot C19 at Boeing Algona Washington" NHTSA ID Number: 11450504. Incident Date February 2, 2022.

- "I happened to be driving and out the nowhere my rear back trunk window shattered, mind that this is the second time this happens one last year my truck was sitting in the garage and I close my door and just hear a loud bang and my back glass shattered." NHTSA ID Number: 11450726. Incident Date February 6, 2022.

- "On Feb 14, the back window exploded and shattered on its own, additional the fron[t] windshield was cracked from one side to the next. I came out of my office to find a hole in the back window, shattered glass every where[.] No one was in or around the vehicle, no vandalism or impact occur[r]ed to the car. Now the remaining pieces of shattered glass are in the door which could be removed. This is the 1st car I have ever had to have this type of issue. I have been a loyal Honda car owner for over 15 years. I lease this car in Sept 2021, I'm not sure why the window would be exploding on its own." NHTSA ID Number: 11453340. Incident Date February 14, 2022.

1
2
3
4
5
6
7
8
9
10
11

- "The contact owns a 2020 Acura RDX. The contact stated that while the vehicle was parked at her residence, a loud sound was heard coming from outside. Upon inspection, the contact noticed that the rear windshield had shattered and there were glass shards on the driveway and inside of the vehicle. There was no impact to the rear windshield that could have caused it to shatter. An auto glass company was made aware of the failure but informed the contact that parts were on backorder. The vehicle was taken to the dealer and the contact was referred to the manufacturer. The vehicle was not repaired and remained at the dealer. The manufacturer was made aware of the failure and a case was opened. The manufacturer informed the contact that the cold temperature caused the failure. The failure mileage was approximately 19,000." NHTSA ID Number: 11454896. Incident Date February 27, 2022.

12
13
14
15
16
17
18
19
20
21

- "The contact owns a 2020 Acura RDX. The contact stated that while the vehicle was parked, she approached the rear of the vehicle to open the hatch and noticed that the edges of the rear window was crumbling. The contact stated that upon opening the hatch, the middle of the hatch window cracked and the pieces fell inside the trunk. The vehicle was towed to the dealer, who informed the contact that they could not determine that the failure was a Manufacturer's defect. The vehicle was not repaired. The manufacturer was notified of the failure and informed the contact that they could not assist unless the dealer determined that it was a Manufacturer's defect. A case was opened. The failure mileage was approximately 22,908." NHTSA ID Number: 11455536. Incident Date March 4, 2022.

22
23
24

- "Rear glass shattered right after I got into my car and closed my door, 100% sure I'm not the only one having this issue. Acura RDX 2019" NHTSA ID Number: 11456431. Incident Date March 7, 2022.

25
26
27

- "Got into the RDX, closed the driver door and rear glass shattered. Called Dealership and spoke with salesman and service manager and both said they never heard of this before. Reading online this has happened several times. Acura in Canada has

28

acknowledged that this is a defect and repairs are done under warranty. What can be done in USA?" NHTSA ID Number: 11462859. Incident Date April 30, 2022.

- "On two occasions now my vehicle was parked at the train station and I have returned to the back window being cracked. The first time (11/21) when I shut the rear passenger door I heard the glass crack. There was a small hole near the bottom center which quickly expanded as doors were closed. The second time (8/22) I walked up to my vehicle and there was a large hole in the rear window which looked exactly the same. Both times glass was also broken around the edges. We are confident it is not vandalism due to the fact that the vehicle was parked in an open well-monitored area, nothing was taken and no other cars were damaged. Something must be defective." NHTSA ID Number: 11479781. Incident Date August 16, 2022.

- "The contact owns a 2019 Acura RDX. The contact stated that upon entering the vehicle, he closed the front driver's side door and the rear window glass exploded. No warning light was illuminated. The vehicle was taken to an independent mechanic where the failure could not be duplicated. The dealer was not notified of the failure. The manufacturer was notified of the failure and informed the contact that the vehicle was out of warranty. The manufacturer suggested that the vehicle be taken to the dealer to be diagnosed. The failure mileage was approximately 50,000." NHTSA ID Number: 11484613. Incident Date September 14, 2022.

- "The rear (trunk) window of my 2019 Acura SUV shattered upon entrance into the vehicle after I closed my driver side door. The vehicle was parked at my place of employment and when I approached the vehicle, the vehicle looked fine, and window was intact. In addition, there prior to the incident, there is no visible crack on the window or indication of attempted theft. There were no lights warning issues. The vehicle has always been serviced by the dealership and never was I informed of any issues with the rear window. This is a safety issue as the window could have shattered while I was driving the vehicle and the sudden shattered cause have harm passengers

in the back seat. I was fortunate that I was not driving which may have caused an accident not knowing what could have occurred on the road especially on a freeway." NHTSA ID Number: 11492017. Incident Date October 27, 2022.

- "Rear windshield shattered. No explanation. I had no tree branches near or on by my car. Car was parked in my driveway. I called Acura corporate and at this time no recall." NHTSA ID Number: 11499284. Incident Date November 24, 2022.

- "On November 26, 2022 RDX rear glass shattered while parked. This was reported to ACURA to find out if this is a known defect. Acura replied that they don't have a recall on this problem. Coincidentally, few days after glass was replaced (insurance) the remote start failed due to 'open trunk, doors or hood[.]' Acura dealer replace defective trunk switch." NHTSA ID Number: 11501937. Incident Date November 26, 2022.

- "The contact owns a 2019 Acura RDX. The contact stated that after she exited the vehicle, her husband closed the front passenger's side door, and she heard a crack. The contact stated that the rear window had shattered. The dealer was notified of the failure and the contact was informed that the glass could be ordered; however, the vehicle was not repaired. The manufacturer was notified of the failure and the contact was informed that the warranty had expired. The failure mileage was approximately 40,000." NHTSA ID Number: 11497744. Incident Date December 8, 2022.

- "Rear windshield shattered as driver shut the driver door after entering the car. There was no sign of anything hitting the glass. There was an Acura TSB for this exact problem but my dealer refuse to acknowledge." NHTSA ID Number: 11497368. Incident Date December 13, 2022.

- "The contact owns a 2020 Acura RDX. The contact stated that while the vehicle was parked, the rear window shattered without warning or impact. The vehicle was taken to the dealer; however, the vehicle was not diagnosed. The contact was advised to notify the insurance company of the failure. The vehicle was not repaired. The manufacturer was notified of the failure and the contact was advised to go through the insurance

company and to take the vehicle to a different dealer for diagnosis. The failure mileage was approximately 20,000." NHTSA ID Number: 11498695. Incident Date December 13, 2022.

- "2019 Acura RDX Advance - Upon entering driver side and closing driver door, rear hatch glass shattered. Vehicle was stationary in my closed garage in Upstate NY after being parked overnight and was then remote started to warm up. Approx. overnight temps were in the teens. There was no evidence of any prior damage to the glass. Damage to the window is more in the lower center above the rear wiper mount." NHTSA ID Number: 11497458. Incident Date December 14, 2022.

- "At the end of the work day, I approached my car that had been remotely started through the app approximately 5 minutes prior. I put my work bag in the back driver side, closed the door, then heard small items hitting the ground. I went to the back of the car and found the back window on the lift gate shattered. The door wasn't slammed. The lift gate has only ever been operated with the power feature." NHTSA ID Number: 11500925. Incident Date January 9, 2023.

- "The back windshield just shattered when I closed the drivers door. I looked online and it seems like a known issue and Acura is not taking any responsibility for it." NHTSA ID Number: 11501441. Incident Date January 12, 2023

- "On January 16, 2023, at approximately 5:00 PM, I returned to my vehicle, a 2019 Acura RDX in a secured parking lot after work, got into the driver's seat, closed the door, turned on the vehicle, and my rear windshield spontaneously shattered without any signs whatsoever of external impact. The entire rear windshield shattered from end to end without explanation. Upon further researching this issue, it appears to be a common problem with several model years of the Acura RDX. I reported this incident to Acura, corporate customer relations, who declined to offer any assistance for the problem, despite there being a technical service bulletin issued for this problem for all 2019 Acura RDX VINs. I was fortunate that this did not occur while my vehicle was in

motion, however, the problem poses a serious safety issue that Acura refuses to do anything about. I'm not sure why they would issue a TSB yet decline to authorize a repair or replacement of the windshield. This is a common problem that is known to Acura and poses a safety issue to the motoring public." NHTSA ID Number: 11504800. Incident Date January 16, 2023.

- "The rear windshield spontaneously shattered when I got in and closed the door. Temp was better 30-40F. I have seen so many complaints online about similar issue." NHTSA ID Number: 11504057. Incident Date January 24, 2023.

- "I went out, got in the vehicle and before starting, I heard a crinkling/rustling noise. It sounded as if something was in the rear of the vehicle. I got out of the vehicle and walked to the back and the entire rear window glass was shattered. There was no impact, no foreign object hit it, etc. It simply shattered while sitting in the driveway, with the vehicle off, when I closed the door. This is a huge safety risk. I have contacted Acura. There is no current recall, but there is a current safety bulleting regarding this issue. Apparently it has happened to thousands of people who own an RDX model years 2019-2022. I cannot believe that this is not an active recall, given the number of reports and the safety concern." NHTSA ID Number: 11504156. Incident Date January 27, 2023.

- "I was driving on the interstate at 75 miles per hour. The back window literally exploded. There was a very loud boom. Upon pulling over, I discovered that the window had shattered. Part of the glass fell down inside the car. We were not going under an overpass and did not hit anything that would have caused the glass to suddenly shatter. Acura has issued a Technical Service Bulletin (TSB) but not a recall. Since the car was out of warranty, the repair is not covered. The internet is full of posts about unexplained glass shattering on 2019 Acura's. This is a safety issue." NHTSA ID Number: 11505927. Incident Date January 29, 2023.

- "Woke up on 2/11/2023 and my whole rear window was shattered into a million pieces. No signs of anything thrown at or hitting it. Filed insurance claim to replace window

but still have glass stuck in between frame and plastic because they can not remove plastics. They are welded to the body of vehicle. No warning signs or alerts. Luckily I was parked in my driveway and not driving when this occur[r]ed. Had I been driving I probably would have caused an accident." NHTSA ID Number: 11507491. Incident Date February 11, 2023.

76.    As the preceding complaints demonstrate, Vehicle owners have lodged many complaints with the NHTSA about their rear windshields shattering which alerted or should have alerted Honda to the defect.

**5.    Customer Complaints on Internet Forums**

77.    In addition to the complaints lodged directly with Honda, dealers, and NHTSA, many Vehicle owners posted complaints regarding repeated rear windshield failures on public online internet forums, which Defendant—like most manufacturers—regularly monitors. The following is a representative sample of those complaints:[8]

- "Who's rear windshield shattered out of nowhere? Apparently, Acura says they haven't heard of this happening. I have a 20 RDX aspec. Curious to how many people have experienced this because I know I'm not the only one. Acura should be aware of this but yet they do nothing about it." Jessica Goncalves, *Acura RDX/Aspec*, Facebook (Dec. 27, 2021).

- "Had it happen a month ago on my 2020 RDX A Spec. The worst part about this happening is that there is a bunch of glass that fell into the hatchback door. So every time you open and close it, you hear a ton of glass rolling around in there. The glass company told me I needed to take it to a dealership to have them remove the excess glass from the door because they could not get at it. The dealership also told me that it's very difficult to remove the glass as well and may need to have the entire door replaced. Luckily insurance will cover everything, but it's been a real pain in the ass. Good times!" Jason Woodsmall, *Acura RDX/Aspec*, Facebook (Dec. 28, 2021).

---

[8] *See* https://www.facebook.com/groups/2280777962201435 (last visited August 24, 2023).

- "Had It happened a few weeks ago, paragon Acura didn't wanna cover It. Spoke to a manager they opened a case with Acura and Acura paid for It. Although just like everyone else I still hear glass in the trunk door" Chris Munoz, *Acura RDX/Aspec*, Facebook (Dec. 28, 2021).

- "Happened to my 2019 Advance about a week ago. My insurance paid 100% of the cost to repair. I had to go to an auto body shop so they could take the whole tailgate apart to get the glass out." Rich Wiley, *Acura RDX/Aspec*, Facebook (Dec. 28, 2021).

- "So this just happened today. Got of work hop in start her up and pop! Rear defrost wasn't on, today on my end it was a sunny day temperature was around 51. I guess I was riding a timing bomb 💣 🙍‍♂️. This was the 2nd replacement OE part" Raydar Jaysen Rayden, *Acura RDX/Aspec*, Facebook (Feb. 1, 2022).

- "This is ridiculous. I literally just had this happen to me yesterday." Latasha Holland, *Acura RDX/Aspec*, Facebook (Feb. 2, 2022).

- "I've also had mine replaced 3 times already." Kevin Troncoso, *Acura RDX/Aspec*, Facebook (Feb. 3, 2022).

- "My glass was done within 2 days, it's all the glass inside the trunk that rattles everytime I open it," Randy Duque, *Acura RDX/Aspec*, Facebook (Feb. 3, 2022).

- "I just got mine replaced yesterday unfortunately this was the second time this happened except this time I was driving []. It's not a glass issue because the first time I had to wait weeks for a replacement and was[] not willing to pay out of pocket got an after market glass and it still happen[e]d." Rios Syl, *Acura RDX/Aspec*, Facebook (Feb. 9, 2022).

- "Even tho it's covered at your dealership report it. @ https://www.nhtsa.gov/ and Acura customer service Some aren't getting it covered. It needs to be a recall! Just so you know people are having this happen more than once. It's happened to me" Sherry DiGirolamo, *Acura RDX/Aspec*, Facebook (Feb. 19, 2022).

- "My wife's 2020 RDX rear window just exploded. She got in the car--shut the door- and boom window blew out. Is Acura covering this?" James Mower, *Acura RDX/Aspec*, Facebook (Feb. 20, 2022).

- "The same thing happen to me and I didn't even have my Acura RDX for a month. I called Acura they couldn't do anything . I called my insurance after 2 wks I finally got auto body shop remove the glass. They called it comprehensive loss." Edna Vega, *Acura RDX/Aspec*, Facebook (Mar. 25, 2022).

- "happened to my 2020 3 weeks ago" Vin Ortez, *Acura RDX/Aspec*, Facebook (Mar. 25, 2022).

- "Just go through safelite they'll fix it within a week im on my second window blowout lol but hey its under there lifetime warranty so why not" Tola Sok, *Acura RDX/Aspec*, Facebook (May 13, 2022).

**6.    Acknowledgements of the Problem by Honda Representatives, Dealers, and Technicians**

78.    Defendant's knowledge of the defect is also shown by the fact that Honda representatives, dealers, and technicians have admitted to Vehicle owners—including many of the named Plaintiffs—that repeated rear windshield failure is a well-known and pervasive problem with the Vehicles.

79.    Defendant further acknowledged the defect in its Service Bulletin, wherein it identified the cause for the Vehicles' rear windshield shattering: "[i]ncorrect specification for the rear defroster grid." *See Acura Service Bulletin 22-014* (June 10, 2022), *supra* note 6; *see also* Exhibit A.

**C.    Defendant's Warranties and Response to the Defect**

80.    Defendant issued to all original purchasers and lessees, including Plaintiffs and the other Class members, a written manufacturer's warranty. This New Vehicle Limited Warranty states that "Acura will repair or replace any part that is defective in material or workmanship under normal use" and that "all repairs/replacements made under this warranty are free of charge."

81.    But, as countless consumers have reported, Defendant initially refused to repair the shattered rear windshields under its warranties.

82.     Defendant knew, or at least should have known, of the defects at the time of sale of the defective Vehicles. Plaintiffs and Class members, however, had no such knowledge. The defects were and are latent in nature because they are not obvious or ascertainable upon reasonable examination.

83.     Despite having more than adequate opportunity to successfully remedy the defect(s) in the Vehicles, Defendant has failed to do so, and in many instances has instead merely replaced defective components with defective components.

84.     Defendant concealed, and continues to conceal, the fact that the Vehicles contain defective rear windshields. Defendant also continues to conceal the fact that the replacement components it provides to purportedly repair the defect are equally defective. Therefore, Plaintiffs did not discover and could not have discovered this defect through reasonable diligence.

85.     Additionally, because the rear windshields of the Vehicles may fail at any time, thereby startling the driver and putting the passengers' safety at risk, the defect makes these defective Vehicles unfit for the use for which they were intended in that they cannot be relied upon as a safe and reliable means of transport.

86.     Despite its knowledge of this defect, Defendant continues to sell defective Vehicles that contain defective rear windshields.

87.     Plaintiffs and the other Class members reasonably relied on Defendant's warranties regarding the quality, durability, and other material characteristics of their Vehicles, including, but not limited to, the representation that the Vehicles contained no known defects (*i.e.*, defects known to Defendant) at the time of sale.

## V.     CLASS ACTION ALLEGATIONS

88.     Plaintiffs bring this action on behalf of themselves and all others similarly situated under Federal Rule of Civil Procedure 23.

89.     Subject to confirmation, clarification, and/or modification based on discovery to be conducted in this action, the class that Plaintiffs seek to represent shall be defined as follows:

All persons and entities nationwide that purchased a model year 2019-2023 Acura Vehicle (the "Nationwide Class").

90.    Alternatively, subject to confirmation, clarification, and/or modification based on discovery to be conducted in this action, Plaintiffs McIntyre, Plaintiff Regnier, Plaintiff Smith, and Plaintiff Null to represent the following state-specific classes, respectively:

   i.    All persons and entities in Alabama that purchased a model year 2019-2023 Acura Vehicle (the "Alabama Class").
   ii.   All persons and entities in California that purchased a model year 2019-2023 Acura Vehicle (the "California Class").
   iii.  All persons and entities in Maryland that purchased a model year 2019-2023 Acura Vehicle (the "Maryland Class").
   iv.   All persons and entities in Texas that purchased a model year 2019-2023 Acura Vehicle (the "Texas Class").

91.    The Nationwide Class, Alabama Class, California Class, Maryland Class, and Texas Class, are collectively referred to herein as the "Classes," and their members are collectively referred to herein as "Class members."

92.    Excluded from the Classes are: (1) Defendant, any entity in which Defendant has a controlling interest, and its legal representatives, officers, directors, employees, assigns and successors; (2) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family; and (3) Class Counsel.

93.    Plaintiffs seek only damages and injunctive relief on behalf of themselves and the Class members. Plaintiffs disclaim any intent or right to seek any recovery in this action for personal injuries, wrongful death, or emotional distress suffered by Plaintiffs and/or the Class members.

94.    *Ascertainability.* While the exact number of Class members is unknown to Plaintiffs at this time and can only be determined by appropriate discovery, membership in the Classes is ascertainable based upon the records maintained by Honda and governmental officials.

95.    *Numerosity.* Upon information and belief, Honda has sold over 100,000 defective Vehicles nationwide during the relevant time period, all of which have the defective rear windshields at issue. Therefore, the Class members are so numerous that individual joinder of all Class members is impracticable under Federal Rule of Civil Procedure 23(a)(1).

96.    *Commonality and Predominance.* Defendant has engaged in the same conduct regarding all of the members of the Classes. The injuries and damages to these Class members also present questions of law and fact that are common to each Class member, and that are common to the

Classes as a whole and will drive the litigation and predominate over any questions affecting only individual Class members. Numerous common issues of law and fact exist as to all Class members, including without limitation:

    a.  whether each Vehicle was sold with a defective rear windshield;

    b.  whether Defendant breached implied warranties made to the Class members;

    c.  whether Defendant replaced defective parts with defective parts;

    d.  whether Defendant knew about the defect and, if so, how long Defendant has known about the defect;

    e.  whether Defendant concealed the defect;

    f.  whether Defendant's conduct violates consumer protection statutes, warranty laws, and other laws asserted herein;

    g.  whether the Class members have suffered damages as a result of the conduct alleged herein, and, if so, the measure of such damages, including diminution of value and deprivation of the benefit of the bargain; and

    h.  whether the Class members are entitled to injunctive relief.

97. ***Typicality.*** The claims, defenses, and injuries of the representative Plaintiffs are typical of the claims, defenses, and injuries of all those in the classes that they seek to respectively represent, and the claims, defenses, and injuries of each Class member are typical of those of all other members in their respective classes, because Plaintiffs and each Class member purchased a Vehicle with the same defective rear windshield.

98. ***Adequacy.*** Plaintiffs are all members of the Nationwide Class and will fairly and adequately represent and protect the interests of the Nationwide Class members as required by Federal Rule of Civil Procedure 23(a)(4). Plaintiffs are adequate representatives because their interests do not conflict with the interests of the Nationwide Class members. Further, Plaintiffs have retained counsel competent and experienced in complex class action litigation, including automotive defect class action litigation, and Plaintiffs intend to prosecute this action vigorously. Plaintiff McIntyre is a member of the Alabama Class, Plaintiff Regnier is a member of the California Class, Plaintiff Smith is a member of the Maryland Class, and Plaintiff Null is a member of the Texas Class, and, for the preceding

reasons, they will fully and adequately represent the interests of their respective class members. Therefore, the interests of the Class members will be fairly and adequately protected.

99. ***Superiority.*** A class action is appropriate under Federal Rule of Civil Procedure 23(b)(3) because questions of law or fact common to Class members predominate over any questions affecting only individual members, and a class action is superior to any other available means for fairly and efficiently adjudicating the controversy. In this regard, the Class members' interests in individually controlling the prosecution of separate actions are low given the magnitude, burden, and expense of individual prosecutions against large corporations such as Defendant. Further, neither Plaintiffs nor their counsel are aware of any ongoing litigation concerning this controversy already begun by any of the Class members. It is desirable to concentrate this litigation in this forum to avoid burdening the courts with individual lawsuits. Individualized litigation presents a potential for inconsistent or contradictory results and also increases the delay and expense to all parties and the court system presented by the legal and factual issues of this case. By contrast, the class action procedure here will have no management difficulties. Defendant's records and the records available publicly will easily identify the Class members. This defect is common to all defective Vehicles; therefore, the same common documents and testimony will be used to prove Plaintiffs' claims as well as the claims of the Class members. Finally, proceeding as a class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

100. A class action is appropriate under Federal Rule of Civil Procedure 23(b)(2) because, as stated above, Honda has acted or refused to act on grounds that apply generally to the Class members, so that final injunctive relief or corresponding declaratory relief is appropriate as to all Class members.

## VI.    CLAIMS

**COUNT I**
**BREACH OF IMPLIED WARRANTY—**
**MAGNUSON-MOSS WARRANTY ACT**
**(15 U.S.C. §§ 2301, *et seq.*)**
**On Behalf of the Nationwide Class**

101. Plaintiffs re-allege and incorporate each and every allegation set forth above as if fully written herein.

102. Plaintiffs bring this claim on behalf of the Nationwide Class.

103. The Vehicles are "consumer product[s]" within the meaning of 15 U.S.C. § 2301.

104. Plaintiffs and members of the Class are "consumers" within the meaning of 15 U.S.C. § 2301 because they are persons entitled under applicable state law to enforce against the warrantor the obligations of its express and implied warranties.

105. Defendant is a "supplier" of consumer products to consumers and a "warrantor" within the meaning of 15 U.S.C. § 2301.

106. 15 U.S.C. § 2310(d)(1)(A) and/or § 2310(d)(3)(C) is satisfied because Plaintiffs properly invoke jurisdiction under the Class Action Fairness Act ("CAFA").

107. Section 2310(d)(1) of Chapter 15 of the United States Code provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

108. Defendant made written and implied warranties regarding the Vehicles to Plaintiffs and Class members within the meaning of 15 U.S.C. § 2301. Defendant provided Plaintiffs and other Class members an implied warranty of merchantability within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7).

109. Defendant breached the implied warranty of merchantability because the Vehicles were not fit for the ordinary purpose for which such goods are used. As described throughout the Complaint, the Vehicles contain defects which render them unsafe, inconvenient, and imperfect such that Plaintiffs and Class members would not have purchased the Vehicles had they known of the defects.

110. Pursuant to 15 U.S.C. § 2310(e), Plaintiffs are entitled to bring this class action and are not required to give Defendant notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiffs pursuant to Rule 23 of the Federal Rules of Civil Procedure. Regardless, Plaintiffs have afforded Honda a reasonable opportunity to cure the breach by providing Honda a pre-suit notice dated June 1, 2023, but Honda has not remedied the breach.

111.    Plaintiffs, individually and on behalf of the other Class members, seek all damages permitted by law, including diminution in value of their Vehicles, in an amount to be proven at trial.

112.    In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiffs and the other Class members can recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiffs and the other Class members in connection with the commencement and prosecution of this action.

113.    Further, Plaintiffs and the Class are also entitled to equitable relief under 15 U.S.C. § 2310(d)(1) and damages as a result of Defendant's violation of its written and/or implied warranties.

**COUNT II**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**On Behalf of the Nationwide Class**

114.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

115.    Plaintiffs bring this claim on behalf of the Nationwide Class.

116.    Honda was at all relevant times a "merchant" with respect to motor vehicles and "seller" of motor vehicles.

117.    The Vehicles are and were at all relevant times "goods."

118.    A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law.

119.    The Vehicles were defective at the time they left the possession of Honda. The Vehicles were not in merchantable condition and are not fit for the ordinary purpose of providing safe and reliable transportation. Specifically, the Class Vehicles contain a rear windshield defect that render the Vehicles unsafe.

120.    Thus, the Vehicles, when sold and at all times thereafter, were not in merchantable condition or quality and are not fit for their ordinary intended purpose.

121.    By virtue of the conduct described herein and throughout this Complaint, Honda breached the implied warranty of merchantability.

122.    Plaintiffs have afforded Honda a reasonable opportunity to cure the breach by providing Honda a pre-suit notice dated June 1, 2023, but Honda has not remedied the breach.

123.    Any attempt by Honda to disclaim or limit the implied warranty of merchantability vis-à-vis consumers would be unconscionable and unenforceable because Honda knowingly sold a defective product without informing consumers about the defect. Any time limits contained in Honda's warranty periods would also be unconscionable and inadequate to protect Plaintiffs and the other Class members. Among other things, Plaintiffs and the other Class members had no meaningful choice in determining any time limitations, the terms of which unreasonably favored Honda. A gross disparity in bargaining power existed between Honda and Plaintiffs and the other Class members, and Honda knew of the defect at the time of sale.

124.    As a direct and proximate result of Honda's breach of the implied warranty of merchantability, Plaintiffs and the other Class members have been damaged in an amount to be proven at trial, including, but not limited to, benefit-of-the-bargain damages, restitution, and/or diminution of value.

## COUNT III
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
## (BASED ON ALABAMA LAW)
## On Behalf of the Alabama Class

125.    Plaintiff McIntyre ("Plaintiff" for purposes of this Count) incorporates by reference all preceding allegations as though fully set forth herein.

126.    Plaintiff brings this claim on behalf of the Alabama Class and in the alternative to Count II.

127.    Honda was at all relevant times a "merchant" with respect to motor vehicles and "seller" of motor vehicles.

128.    The Vehicles are and were at all relevant times "goods."

129.    A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Ala. Code § 7-2-314.

130.    The Vehicles were defective at the time they left the possession of Honda. The Vehicles were not in merchantable condition and are not fit for the ordinary purpose of providing safe and

reliable transportation. Specifically, the Class Vehicles contain a rear windshield defect that renders the Vehicles unsafe.

131. Thus, the Vehicles, when sold and at all times thereafter, were not in merchantable condition or quality and are not fit for their ordinary intended purpose.

132. By virtue of the conduct described herein and throughout this Complaint, Honda breached the implied warranty of merchantability.

133. Plaintiff has afforded Honda a reasonable opportunity to cure the breach by providing Honda a pre-suit notice dated June 1, 2023, but Honda has not remedied the breach.

134. Any attempt by Honda to disclaim or limit the implied warranty of merchantability vis-à-vis consumers would be unconscionable and unenforceable because Honda knowingly sold a defective product without informing consumers about the defect. Any time limits contained in Honda's warranty periods would also be unconscionable and inadequate to protect Plaintiff and the other Alabama Class members. Among other things, Plaintiff and the other Alabama Class members had no meaningful choice in determining any time limitations, the terms of which unreasonably favored Honda. A gross disparity in bargaining power existed between Honda and Plaintiff and the other Alabama Class members, and Honda knew of the defect at the time of sale.

135. As a direct and proximate result of Honda's breach of the implied warranty of merchantability, Plaintiff and the other Alabama Class members have been damaged in an amount to be proven at trial, including, but not limited to, benefit-of-the-bargain damages, restitution, and/or diminution of value.

**COUNT IV**
**VIOLATIONS OF THE ALABAMA DECEPTIVE TRADE PRACTICES ACT**
**(ALA. CODE § 8-19-1, *et seq.*)**
**On Behalf of the Alabama Class**

136. Plaintiff McIntyre ("Plaintiff" for purposes of this Count) incorporates by reference all preceding allegations as though fully set forth herein.

137. Plaintiff brings this Count on behalf of the Alabama Class.

138. By failing to release material facts about the defect, Honda curtailed or reduced the ability of consumers to take notice of material facts about their Vehicle, and/or it affirmatively operated

to hide or keep those facts from consumers. Moreover, Honda has otherwise engaged in activities with a tendency or capacity to deceive.

139.    By failing to disclose and by actively concealing the defect in the rear windshield and marketing its Vehicles as safe, reliable, and of high quality, Honda engaged in deceptive trade practices in violation of the Alabama's Deceptive Trade Practices Act.

140.    In the course of Honda's business, it willfully failed to disclose and actively concealed the defect as discussed herein. Honda compounded the deception by repeatedly asserting the Vehicles were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that valued safety, and stood behind its vehicles once they are on the road.

141.    Honda's unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, and did in fact deceive reasonable consumers, including Plaintiff and the other Alabama Class members.

142.    Honda intentionally and knowingly misrepresented material facts regarding the Vehicles with an intent to mislead Plaintiff and the other Alabama Class members, including without limitation by failing to disclose the defects in light of circumstances under which the omitted facts were necessary in order to correct the assumptions, inferences or representations being made by Honda about the reliability and safety of its Vehicles.

143.    Honda's conduct as alleged above constitutes unfair or deceptive acts or practices in violation of Alabama's Deceptive Trade Practices Act for, *inter alia*, one or more of the following reasons:

   a) representing that the Vehicles have sponsorship, approval, characteristics, benefits, and qualities that they do not have;

   b) representing that the Vehicles are of a particular standard, quality, or grade when they are not;

   c) advertising the Vehicles with intent not to sell them as advertised including but not limited to selling the Vehicles with the known defects at issue in this litigation; and

   d) knowingly making false and misleading statements of fact concerning selling the Vehicles with the known defects at issue in this litigation.

144.    Honda's actions as alleged above occurred in the conduct of trade or commerce.

145.    Honda's unfair or deceptive actions impact the public interest because Plaintiff and the Alabama Class were injured in exactly the same way as many others purchasing Vehicles in Alabama, as a result of Honda's generalized course of deception. All of the conduct alleged herein occurred, and continues to occur, in the conduct of Honda's business.

146.    Plaintiff and the Alabama Class were injured as a result of Honda's conduct as described above, including but not limited to diminution of value.

147.    Honda's conduct proximately caused the injuries to Plaintiff and the Alabama Class.

148.    Accordingly, Honda is liable to Plaintiff and the Alabama Class for damages in an amount to be proven at trial, including attorneys' fees, costs, and treble damages.

## COUNT V
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (BASED ON CALIFORNIA LAW)
### On Behalf of the California Class

149.    Plaintiff Regnier ("Plaintiff" for purposes of this Count) incorporates by reference all preceding allegations as though fully set forth herein.

150.    Plaintiff brings this Count on behalf of the California Class and in the alternative to Count II.

151.    Honda was at all relevant times a "merchant" with respect to motor vehicles and "seller" of motor vehicles.

152.    The Vehicles are and were at all relevant times "goods."

153.    A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Cal. Com. Code § 2314.

154.    The Vehicles were defective at the time they left the possession of Honda. The Vehicles were not in merchantable condition and are not fit for the ordinary purpose of providing safe and reliable transportation. Specifically, the Class Vehicles contain a rear windshield defect that renders the Vehicles unsafe.

155.    Thus, the Vehicles, when sold and at all times thereafter, were not in merchantable condition or quality and are not fit for their ordinary intended purpose.

156.    By virtue of the conduct described herein and throughout this Complaint, Honda breached the implied warranty of merchantability.

157.    Plaintiff has afforded Honda a reasonable opportunity to cure the breach by providing Honda a pre-suit notice dated June 1, 2023, but Honda has not remedied the breach.

158.    Any attempt by Honda to disclaim or limit the implied warranty of merchantability vis-à-vis consumers would be unconscionable and unenforceable because Honda knowingly sold a defective product without informing consumers about the defect. Any time limits contained in Honda's warranty periods would also be unconscionable and inadequate to protect Plaintiff and the other California Class members. Among other things, Plaintiff and the other California Class members had no meaningful choice in determining any time limitations, the terms of which unreasonably favored Honda. A gross disparity in bargaining power existed between Honda and Plaintiff and the other California Class members, and Honda knew of the defect at the time of sale.

159.    As a direct and proximate result of Honda's breach of the implied warranty of merchantability, Plaintiff and the other California Class members have been damaged in an amount to be proven at trial, including, but not limited to, benefit-of-the-bargain damages, restitution, and/or diminution of value.

**COUNT VI**
**BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY**
**(BASED ON MARYLAND LAW)**
**On Behalf of the Maryland Class**

160.    Plaintiff Smith ("Plaintiff" for purposes of this Count) incorporates by reference all preceding allegations as though fully set forth herein.

161.    Plaintiff brings this claim on behalf of the Maryland Class and in the alternative to Count II.

162.    Honda was at all relevant times a "merchant" with respect to motor vehicles and "seller" of motor vehicles.

163.    The Vehicles are and were at all relevant times "goods."

164.    A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Md. Code Com. Law § 2-314.

165.    The Vehicles were defective at the time they left the possession of Honda. The Vehicles were not in merchantable condition and are not fit for the ordinary purpose of providing safe and reliable transportation. Specifically, the Class Vehicles contain a rear windshield defect that renders the Vehicles unsafe.

166.    Thus, the Vehicles, when sold and at all times thereafter, were not in merchantable condition or quality and are not fit for their ordinary intended purpose.

167.    By virtue of the conduct described herein and throughout this Complaint, Honda breached the implied warranty of merchantability.

168.    Plaintiff has afforded Honda a reasonable opportunity to cure the breach by providing Honda a pre-suit notice dated June 1, 2023, but Honda has not remedied the breach.

169.    Any attempt by Honda to disclaim or limit the implied warranty of merchantability vis-à-vis consumers would be unconscionable and unenforceable because Honda knowingly sold a defective product without informing consumers about the defect. Any time limits contained in Honda's warranty periods would also be unconscionable and inadequate to protect Plaintiff and the other Maryland Class members. Among other things, Plaintiff and the other Maryland Class members had no meaningful choice in determining any time limitations, the terms of which unreasonably favored Honda. A gross disparity in bargaining power existed between Honda and Plaintiff and the other Maryland Class members, and Honda knew of the defect at the time of sale.

170.    As a direct and proximate result of Honda's breach of the implied warranty of merchantability, Plaintiff and the other Maryland Class members have been damaged in an amount to be proven at trial, including, but not limited to, benefit-of-the-bargain damages, restitution, and/or diminution of value.

**COUNT VII**
**BREACH OF IMPLIED WARRANTY**
**(BASED ON TEXAS LAW)**
**On Behalf of the Texas Class**

171.    Plaintiff Null ("Plaintiff" for purpose of this count) incorporates by reference all preceding allegations as though fully set forth herein.

172.    Plaintiff brings this Count on behalf of the Texas Class and in the alternative to Count II.

173.    Honda was at all relevant times a "merchant" with respect to motor vehicles and "seller" of motor vehicles.

174.    The Vehicles are and were at all relevant times "goods."

175.    A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Tex. Bus. & Com. Code § 2.314.

176.    The Vehicles were defective at the time they left the possession of Honda. The Vehicles were not in merchantable condition and are not fit for the ordinary purpose of providing safe and reliable transportation. Specifically, the Class Vehicles contain a rear windshield defect that renders the Vehicles unsafe.

177.    Thus, the Vehicles, when sold and at all times thereafter, were not in merchantable condition or quality and are not fit for their ordinary intended purpose.

178.    By virtue of the conduct described herein and throughout this Complaint, Honda breached the implied warranty of merchantability.

179.    Plaintiff has afforded Honda a reasonable opportunity to cure the breach by providing Honda a pre-suit notice dated June 1, 2023, but Honda has not remedied the breach.

180.    Any attempt by Honda to disclaim or limit the implied warranty of merchantability vis-à-vis consumers would be unconscionable and unenforceable because Honda knowingly sold a defective product without informing consumers about the defect. Any time limits contained in Honda's warranty periods would also be unconscionable and inadequate to protect Plaintiff and the other Texas Class members. Among other things, Plaintiff and the other Texas Class members had no meaningful choice in determining any time limitations, the terms of which unreasonably favored Honda. A gross disparity in bargaining power existed between Honda and Plaintiff and the other Texas Class members, and Honda knew of the defect at the time of sale.

181.    As a direct and proximate result of Honda's breach of the implied warranty of merchantability, Plaintiff and the other Texas Class members have been damaged in an amount to be proven at trial, including, but not limited to, benefit-of-the-bargain damages, restitution, and/or diminution of value.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on their own behalf and on behalf of the Class members, respectfully request judgment against Defendant as follows:

(A)    certifying the proposed Nationwide Class and state specific classes and subclass;

(B)    appointing Plaintiffs and their counsel to represent the Class;

(C)    alternatively, appointing Plaintiffs McIntyre, Plaintiffs Regnier, Plaintiffs Smith, and Plaintiff Null and their counsel to represent the Alabama, California, Maryland, and Texas Classes, respectively;

(D)    ordering injunctive relief, restitution, disgorgement, and/or other appropriate relief;

(E)    awarding compensatory, punitive, exemplary, and other recoverable damages;

(F)    awarding reasonable attorneys' fees and expenses;

(G)    awarding pre-judgment and post-judgment interest; and

(H)    awarding such other and further relief as this Court may deem just and proper.

### JURY DEMAND

Plaintiffs demand a trial by jury of all issues so triable.

Dated: August 25, 2023                              Respectfully submitted,

*/s/ Annick M. Persinger*

Annick M. Persinger (CA Bar No. 272996)
**TYCKO & ZAVAREEI LLP**
10880 Wilshire Blvd. Suite 1101
Los Angeles, CA 90024
(510) 254-6808
*apersinger@tzlegal.com*

Andrea R. Gold
Leora N. Friedman (pro hac vice *forthcoming*)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Avenue, NW Suite 1010
Washington, DC 20006
(202) 973-0900
*agold@tzlegal.com*
*lfriedman@tzlegal.com*

Jeffrey S. Goldenberg
**GOLDENBERG SCHNEIDER, L.P.A.**
4445 Lake Forest Drive, Suite 490
Cincinnati, Ohio 45242
jgoldenberg@gs-legal.com
(513) 345-8297
*jgoldenberg@gs-legal.com*

Frank Bartela (*pro hac vice* forthcoming)
**DWORKEN & BERNSTEIN**
60 South Park Place
Painesville, OH 44077
(440) 352-3391
*fbartela@dworkenlaw.com*

*Counsel for Plaintiffs Franklin McIntyre, Melissa Null, Christina Regnier, and Crystal Smith*