# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

FRANKLIN MCINTYRE, MELISSA NULL, CHRISTINA REGINER, CRYSTAL SMITH, PAULA NIENHUESER, RYAN COLLINS, KEVIN GROSS, NANCY BOCEK, JOCELYN BLAND, MARK KROIK, ABHINAV ARUN KUMAR, AND LORI PERRINS, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

AMERICAN HONDA MOTOR CO., INC., a California corporation

Defendant.

Case No. 2:23-cv-07024-SPG-BFM

**ORDER GRANTING, IN PART, DEFENDANT AMERICA HONDA MOTOR CO., INC.'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED CLASS ACTION COMPLAINT [ECF NO. 48]**

Before the Court is the Defendant American Honda Motor Co., Inc.'s ("Defendant") Motion to Dismiss Plaintiffs' Second Amended Class Action Complaint. (ECF No. 48-1 ("Motion")). Having considered the parties' submissions, the relevant law, and the record in this case, the Court finds this matter suitable for resolution without oral argument. *See* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. For the reasons set forth below, the Court GRANTS, in part, Defendant's Motion.

-1-

## I.    BACKGROUND

The Court summarized the factual background for this case in its July 3, 2024, order granting, in part, Defendant's motion to dismiss Plaintiff's first amended complaint. *See* (ECF no. 43 (the "July Order")).  In brief, this putative class action alleges that Acura RDXs from the model years 2019-2023 (the "Vehicles") contain a defective electrical defroster that can cause their rear hatch window to spontaneously shatter with no external impact.  (ECF no. 47 (Second Amended Complaint ("SAC")) ¶¶ 1-2).  Plaintiffs initially brought twenty-eight separate claims on behalf of a putative nationwide class and putative state classes in Alabama, California, Illinois, Kansas, Maryland, Michigan, New Jersey, Oregon, Texas, and Washington.  (ECF No. 30 (First Amended Complaint ("FAC") ¶ 16).

In the July Order, the Court granted Defendant's motion to dismiss as to Counts II, IV, V, VI, VII, VIII, IX, X, XI, XII, XIII, XIV, XVIII, XXII, XXIII, XXIV, XXVI, XXVII, and XXVIII of the FAC, with leave to amend. *See* (July Order at 33).  In the SAC, Plaintiffs have withdrawn Counts X, XXIII, and XXVII—relating to the California Unfair Competition Law, the Oregon implied warranty of merchantability, and the Washington implied warranty of merchantability, respectively—but have otherwise realleged all the dismissed counts. *See* (SAC).  On September 25, 2024, Defendant filed the instant Motion, seeking dismissal of Plaintiffs' California and Illinois implied warranty of merchantability claims and all of Plaintiffs' state law consumer protection claims.  (Mot. at 12-16).  Plaintiffs opposed on November 4, 2024 (ECF no. 49 ("Opposition")), and Defendant filed its reply on November 21, 2024, (ECF No. 53 ("Reply")).[1]

As relevant here, the SAC alleges that Defendant's authorized dealers qualify as agents of Defendant based on the use of Defendant's logo, Defendant's provision of technical service bulletins and service instructions to dealers, Defendant's distribution of

---

[1] The Court notes that both the Opposition and the Reply were untimely filed relative to the November 20, 2024, hearing date.  Per Local Rules 7-9 and 7-10, opposing papers are due no later than twenty-one days before the date designated for the related hearing, and reply papers are due no later than fourteen days prior to the related hearing.  The parties are admonished to timely submit future filings.

advertising and promotional materials to dealerships, and Defendant's requirement that customers return to authorized dealerships for warranty repairs. (*Id.* ¶ 177). Plaintiffs allege that Defendant released a Technical Service Bulletin to authorized dealers in June 2022, announcing that model year 2019 and certain 2020 model year RDXs suffered from a defect that caused the rear hatch window to shatter with no external impact. (*Id.* ¶ 195). Plaintiffs also aver that Defendant's relationship with its dealerships is governed by a dealership agreement ("Dealership Agreement") that imposes reciprocal obligations on the parties. (*Id.* ¶ 178). Under the Dealership Agreement with Honda dealers,[2] the dealers must, among other things, "follow all reasonable directives and suggestions, and the Policies and Procedures" made by Defendant, "perform any and all warranty, campaign, recall, product-improvement, or product-update service in compliance with instructions and directives issued by" Defendant, and limit warranties to those furnished by Defendant. (*Id.*).

The SAC further alleges that the Dealership Agreement required authorized dealers to "expressly incorporate any warranty furnished by [Defendant] with a Honda Vehicle as a part of each order form or other contract for the sale of such Honda Vehicle by Dealer to any buyer." (*Id.*). Plaintiffs aver that this warranty provision was "designed for and intended to benefit only the ultimate purchasers and lessees of the Vehicles," since the dealers "have no rights under the warranty agreements provided with the Vehicles." (*Id.* ¶ 184).

As relevant to the California implied warranty claim, the SAC alleges that Plaintiff Christina Regnier ("Regnier"), a citizen of California, purchased an Acura RDX in November 2019 from an Acura dealer. (SAC ¶¶ 30-31). Prior to purchasing the vehicle, Regnier researched the vehicle online, including on Acura's website, which contained no disclosures relating to the alleged defect. (*Id.* ¶ 33). Regnier also discussed the vehicle's

_____

[2] Plaintiffs attached to the SAC a copy of Defendant's dealership agreement with authorized Honda dealers, not Acura dealers, but alleged upon information and belief that agreements with Acura dealers contain substantially similar provisions. (Opp. ¶ 178 n.5).

features with a salesperson at the dealership and reviewed the vehicle's Monroney sticker before deciding to purchase the vehicle. Neither the sticker nor the salesperson disclosed any defect with the vehicle, which would have impacted her decision to purchase the vehicle at the offered price. (*Id.* ¶¶ 35-36, 39).

The SAC similarly alleges that Plaintiff Nancy Bocek ("Bocek"), a citizen of Illinois, purchased a pre-owned 2020 Acura RDX in June 2020 from an Acura dealer. (*Id.* ¶¶ 41-42). Bocek researched the car online, discussed the vehicle's features with the authorized dealer's salesperson, and reviewed the vehicle's Monroney sticker before purchasing the vehicle. (*Id.* ¶¶ 44, 46). In none of these contacts did Bocek receive any disclosure regarding any defect with the vehicle's rear hatch window, which would have impacted her decision to purchase the vehicle at the offered price. (*Id.* ¶¶ 47, 51).

## II.    LEGAL STANDARD

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). "Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). To survive a 12(b)(6) motion, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks and citation omitted).

If a claim sounds in fraud or mistake, courts apply the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires such claims to "state with

particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To meet this standard, a plaintiff must identify "[t]he time, place, and content of [any] alleged misrepresentation," as well as the "circumstances indicating falseness" or the "manner in which the representations at issue were false and misleading." *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547–48 (9th Cir. 1994) (internal quotation marks, citation, and alterations omitted). Those allegations "must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (citation omitted). Although the circumstances of the alleged fraud must be alleged with specificity, knowledge "may be alleged generally." Fed. R. Civ. P. 9(b).

When ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The Court is "not required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice," nor must it accept "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Seven Arts Filmed Ent. Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013) (internal quotation marks and citation omitted). Where dismissal is appropriate, a court should grant leave to amend unless the plaintiff could not possibly cure the defects of the pleading. *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009).

## III.  DISCUSSION

### A.  Plaintiffs' Implied Warranty Claims

Defendant moves to dismiss two of Plaintiffs' implied warranty claims—Counts VIII (by Regnier on behalf of the putative California class) and XII (by Bocek on behalf of the putative Illinois subclass). The Court will consider each count separately.

### 1.   California Implied Warranty Claim

First, Defendant seeks dismissal of the California implied warranty claim, arguing that Plaintiffs have failed to establish vertical privity with Defendant or show that any exception to California's privity requirement applies.  (Mot. at 12-13).  As the Court explained in the July Order, "[u]nder California Commercial Code section 2314, . . . a plaintiff asserting breach of warranty claims must stand in vertical contractual privity with the defendant."  *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008). "A buyer and seller stand in privity if they are in adjoining links of the distribution chain," and "an end consumer . . . who buys from a retailer is not in privity with a manufacturer." *Id.*  *See also Osborne v. Subaru of Am., Inc.*, 198 Cal. App. 3d 646, 656 n. 6 (1988). However, California recognizes limited "particularized exceptions" to this rule, including "when the plaintiff relies on written labels or advertisements of a manufacturer." *Clemens*, 534 F.3d at 1023.

Plaintiffs argue that California also recognizes an exception to the privity requirement for third-party beneficiaries of a contract.  (Opp. at 12).  *See Gilbert Fin. Corp. v. Steelform Contracting Co.*, 82 Cal. App. 3d 65, 69 (1978) (concluding in context of construction contract that plaintiff was "a third party beneficiary of the contract . . . and therefore can sue for breach of the implied warranty of fitness").  Federal courts have split as to the applicability of this exception following *Clemens*, which referred only to "particularized exceptions" for reliance on written labels or advertisements and "special cases involving foodstuffs, pesticides, and pharmaceuticals, and where the end user is an employee of the purchaser."  534 F.3d at 1023.  Some courts have interpreted *Clemens* as articulating the only "particularized exceptions" available under California law. *See Long v. Graco Children's Prods. Inc.*, No. 13-cv-01257-WHO, 2013 WL 4655763, at *12 (N.D. Cal. Aug. 26, 2013).  *See also Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d 1075, 1083 (N.D. Cal. 2011) (distinguishing *Gilbert* because it involved a construction, rather than a consumer, contract).

However, in *Bryde v. General Motors, LLC*, Judge Orrick repudiated his earlier decision in *Long* and concluded that *Clemens* did not foreclose application of the third-party beneficiary exception. No. 16-cv-02421-WHO, 2016 WL 6804584, at *15-16 (N.D. Cal. Nov. 17, 2016). He reasoned that, although the *Clemens* court declined an invitation to create a new exception to the privity requirement, the plaintiff in *Clemens* "did not argue for application of the third-party beneficiary exception and the court did not consider its existence." *Id.* at *16. Other courts have reached the same conclusion. For example, in *Precht v. Kia Motors America, Inc.*, the court concluded that "vertical contractual privity is not needed to assert a claim for breach of implied warranty when plaintiff is a third-party beneficiary of a contract between other parties which does create an implied warranty." No. SA CV 14-1148-DOC (MANx), 2014 WL 10988343, at *10 (C.D. Cal. Dec. 29, 2014). *See also In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 984 (N.D. Cal. 2014).

The Court is persuaded by the logic of the latter line of cases. While *Clemens* is binding on the Court, it did not foreclose the applicability of the third-party beneficiary exception. Rather, as one court noted, "the Ninth Circuit's opinion [in *Clemens*] simply reflects that the plaintiff argued for similar equities" to the established exceptions, not that the plaintiff specifically invoked the third-party beneficiary exception. *MyFord Touch Consumer Litig.*, 46 F. Supp. 3d at 984 (internal quotation marks and citation omitted). *See also In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prods. Liab. Litig.* ("*Toyota Motor Corp.*"), 754 F. Supp. 2d 1145, 1185 (C.D. Cal. 2010) ("[T]he Ninth Circuit had no occasion in *Clemens* to consider the California appellate cases recognizing the third-party beneficiary exception to the vertical privity requirement of implied warranty claims."). Because *Gilbert* remains good law in California and *Clemens* did not explicitly deal with the third-party beneficiary exception, the exception remains available.

Under California law, a third party may "bring an action even though he is not specifically named as a beneficiary, if he is more than incidentally benefitted by the contract." *Gilbert*, 82 Cal. App. 3d at 69-70. In the context of vehicle purchases, "[w]hen

-7-

buyers allege they purchased vehicles from a network of dealers who are agents of Defendants and that the buyers were the intended consumers, they have sufficiently alleged they are third party beneficiaries." *Stockinger v. Toyota Motor Sales USA Inc.*, LACV 17-00035-VAP (KLSx), 2017 WL 10574372, at *13 (C.D. Cal. July 7, 2017) (internal quotation marks and citation omitted). *See also Bryde*, 2016 WL 6804584, at *16 (concluding plaintiff had adequately alleged agency relationship for third-party beneficiary exception where (1) plaintiffs bought their vehicles from and took vehicles to defendant's dealers when they had problems; (2) plaintiffs contacted defendant or its authorized agents for repairs; and (3) defendant issued technical service bulletins to dealers, instructing them how to deal with issues raised by plaintiffs); *Toyota Motor Corp.*, 754 F. Supp. 2d at 1185 (concluding plaintiffs adequately pleaded third-party beneficiary status where they alleged that they purchased vehicles from a network of dealers who are agents of defendants and that the plaintiffs were the intended consumers of the vehicles).

Here, Plaintiffs have alleged that the Dealership Agreement requires dealers to "expressly incorporate any warranty furnished by [Defendant] with a Honda Vehicle as a part of each order form or other contract for the sale of such Honda Vehicle by Dealer to any buyer," (SAC ¶ 178), and that Defendant requires customers to return to authorized dealerships for warranty repairs, (*id.* ¶ 177). Plaintiffs also aver that the Dealership Agreement requires dealers to "follow all reasonable directives and suggestions" of Defendant, (*id.* ¶ 178), that on June 10, 2022, Defendant released a technical service bulletin to authorized dealers that announced the 2019 and certain 2020 model year RDXs "suffered from a defect that caused the rear hatch window to shatter or break," (*id.* ¶ 195), and that the service bulletin directs all dealerships to replace defective windshields. Further, Plaintiffs assert in the SAC that the warranty provision in the Dealership Agreements is "designed for and intended to benefit only the ultimate purchasers and lessees of the Vehicles," since the dealers "have no rights under the warranty agreements provided with the Vehicles," and thus Plaintiffs are the intended third-party beneficiaries of Defendant's Dealership Agreements. (*Id.* ¶ 184). The Court finds these allegations

sufficient to plausibly allege the existence of an agency relationship[3] and that Plaintiffs were the intended beneficiaries of the Dealership Agreement.  While the scope of such an agency relationship is "a factual [question] for the jury to resolve," *MyFord Touch Consumer Litig.*, 46 F. Supp. 3d at 956, plaintiffs have adequately pleaded an exception to the vertical privity requirement.  Defendant's Motion as to this claim is therefore denied.[4]

### 2.   Illinois Claims

Defendant next argues that Plaintiffs' implied warranty claims under Illinois law do not meet the requirement of vertical privity or any of the exceptions to the privity requirement.  (Mot. at 13-14).  As the Court explained in the July Order, Illinois "recognizes various exceptions to the privity requirement," including a "direct relationship" exception, "which applies when there are direct dealings between the manufacturer and the remote customer." *Elward v. Electrolux Home Prods., Inc.*, 214 F. Supp. 3d 701, 704–05 (N.D. Ill. 2016).  Courts interpreting Illinois law have typically applied the direct relationship exception only in situations involving direct contact between the manufacturer and the third-party purchaser. *See, e.g.*, *Frank's Maint. & Eng'g, Inc. v. C.A. Roberts Co.*, 86 Ill. App. 3d 980, 992-93 (1980) (applying exception where manufacturer "knew the identity, purpose and requirements of the dealer's customer and manufactured or delivered the goods specifically to meet those requirements"); *Crest Container Corp. v. R.H. Bishop Co.*, 111 Ill. App. 3d 1068, 1076 (1982) (applying exception where end customer's specifications were sent to manufacturer and manufacturer custom-made parts for customer); *ABCO Metals Corp. v. J.W. Imps. Co., Inc.*, 560 F. Supp.

---

[3] Defendant suggests that under California Vehicle Code § 11713.1(f), a dealer qualifies only as a franchisee and not an agent of a car manufacturer.  "However, the status of being an independent franchise and acting as an agent of a manufacturer for the purposes of selling its vehicle does not appear to be mutually exclusive, nor does [Defendant] cite to authority indicating otherwise." *Laforest v. Gen. Motors, LLC*, No. 2:23-cv-06966-MEMF, 2024 WL 1829619, at *5 n.3 (C.D. Cal. Mar. 18, 2024).

[4] Because the Court denies the motion based on Plaintiff's allegations of third-party beneficiary status, the Court need not consider Plaintiffs' alternative arguments.

125, 128 (N.D. Ill 1982) (applying exception where manufacturer communicated directly with third-party customer and assured customer that product would be fixed).

Plaintiffs first suggest that they have satisfied the direct relationship requirement based on Bocek's research on Acura's website prior to purchase and her viewing of the Monroney sticker. (Opp. at 19-20). They cite to *In re Rust-Oleum Restore Marketing, Sales Practices and Products Liability Litigation* for the proposition that the direct relationship exception applies where a plaintiff "relies on written labels or advertisements of a manufacturer." 155 F. Supp. 3d 772, 807 (N.D. Ill. 2016). However, the quoted language comes not from Illinois law, but from *Clemens*, a case interpreting California law. *See id.* (quoting *Clemens*, 534 F.3d at 1023). Moreover, most federal courts have concluded that advertising is insufficient to satisfy the direct relationship requirement. *See, e.g.*, *Redmon v. Whirlpool Corp.*, No. 20 C 6626, 2020 WL 9396529, at *5 (N.D. Ill. Apr. 28, 2020); *In re Vtech Data Breach Litig.*, No. 15 CV 10889, 2018 WL 1863953, at *5 (N.D. Ill Apr. 18, 2018); *Guajardo v. Skechers USA, Inc.*, 503 F. Supp. 3d 746, 753 (C.D. Ill. 2020). The Court agrees with the latter group that Illinois law requires a more direct relationship between a third-party consumer and the manufacturer than that established through general advertisements.

Plaintiffs also argue that they had a direct relationship with Defendant based on the agency relationship between Defendant and its Illinois dealers. (Opp. at 18). Plaintiffs again point to the obligations imposed upon dealers under the Dealership Agreements with Defendant, including the requirement to incorporate warranties furnished by Defendant into consumer contracts, to inform Defendant of unremedied customer complaints, and to perform warranty services in compliance with Defendant's instructions. (*Id.* at 19). However, to the extent that Illinois courts have recognized a third-party beneficiary exception to the privity requirement, they have construed it as simply a subcategory of the direct relationship exception and have still required direct contacts with the principal manufacturer. *See Rhodes Pharmacal Co. v. Cont'l Can Co.*, 72 Ill. App. 2d 362, 372 (1966) (applying third-party beneficiary exception where "a seller makes a product for a

user who is not a direct buyer, but with whom the seller has direct dealings"); *Redmon*, 2020 WL 9396529, at *5 (stating third-party beneficiary exception applies "where the manufacturer knew the identity, purpose and requirements of the customer and manufactured or delivered the goods specifically to meet those requirements" (internal quotation marks and citation omitted)). Plaintiffs have not alleged any such direct contact with Defendant to satisfy this requirement.

Finally, Plaintiffs argue that Bocek's express warranty with Defendant constitutes a direct relationship sufficient to satisfy Illinois' requirement. (*Id.* at 20). Plaintiffs point to *Conti v. American Honda Motor Co., Inc.*, where the court concluded that allegations that "Honda dealt directly with Plaintiffs pre- and post-sale by warranting their vehicles against certain defects and maintaining a customer service line that helped Plaintiffs resolve issues with their vehicles." No. CV 19-02160-CJC (GJSx), 2019 WL 10371067, at *9 (C.D. Cal. Oct. 17, 2019). Here though, Plaintiffs have not alleged that Defendant maintained a customer service line or that Plaintiffs otherwise directly communicated with Defendant about the vehicles. Given the focus Illinois courts have placed on direct contacts with the manufacturer, this Court is not persuaded that the provision of an express warranty by itself is sufficient to meet the requirements. *Cf. Watson v. Coachmen Recreational Vehicle Co., LLC*, No. 05-CV-524-DRH, 2006 WL 8455822, at *7 (S.D. Ill. Mar. 31, 2006) (concluding under Magnuson-Moss Warranty Act that extension of express warranty is insufficient to create an exception to the privity requirement for implied warranty claim). Accordingly, Plaintiffs have not adequately alleged an exception to the Illinois requirement of privity for implied warranty claims. The Motion as to Count XII of the SAC is granted, with leave to amend.

### B. Plaintiffs' State Law Consumer Protection Claims

Finally, Defendant argues that Plaintiffs' state law consumer protection claims do not satisfy the heightened pleading standard of Rule 9. Federal Rule 9(b) applies to any claim that is "grounded in fraud," *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009), and requires plaintiffs to "state with particularity the circumstances constituting

fraud or mistake," Fed. R. Civ. P. 9(b). A complaint alleging affirmative misrepresentations must set forth "the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007) (citation omitted). Defendant argues that Plaintiffs have failed to adequately allege precisely where the purported omissions occurred here. (Mot. at 14-15).

In their Opposition, Plaintiffs offer three locations where the purported omissions occurred. First, they allege that they purchased their vehicles from authorized dealers and discussed the vehicles' features with a salesperson at the dealership. (SAC ¶¶ 20, 23, 31, 35). Second, Plaintiffs allege that they reviewed Defendant's website before purchasing their vehicles. (*Id.* ¶¶ 21, 33, 44). And finally, they allege that they viewed the Monroney window sticker before purchasing their vehicles. (*Id.* ¶¶ 23, 35, 46). They further allege that no disclosure was included in any of these locations and that such disclosure would have impacted their decision to purchase the vehicles. (*Id.* ¶¶ 28, 39, 51).

Other federal courts have found such allegations sufficient to satisfy the Rule 9(b) requirement. For example, in *Cho v. Hyundai Motor Co., Ltd.*, this Court concluded that Rule 9(b) was satisfied where plaintiffs alleged that they "reviewed marketing and promotional materials available at the dealership, spoke with sales representatives, and saw the Monroney stickers before purchase." 636 F. Supp. 3d 1149, 1165 (C.D. Cal. 2022) (internal quotation marks omitted). Similarly, in *Wilson v. Hyundai Motor America*, the court concluded that plaintiffs had plausibly alleged a manner of disclosure for a fraud claim where they "specif[ied] the kinds of information they relied on in making their purchases, including advertisements, Defendants' websites, window stickers, and conversations with dealers, and allege that they were not informed of the defect." No. 8:22-cv-00771-JLS-JDE, 2023 WL 3025376 (C.D. Cal. Mar. 14, 2023). *See also Sloan v. Gen. Motors LLC*, 287 F. Supp. 3d 840, 875-76 (N.D. Cal. 2018) ("Plaintiffs who purchased their vehicles (both new and used) directly from authorized [auto manufacturer] dealerships

have adequately pleaded that they had an opportunity to receive the information at the dealerships had it been disclosed to them.").

By alleging multiple possible locations for the purported omissions, Plaintiffs have adequately pleaded a location to satisfy Rule 9(b).  Accordingly, Defendant's motion to dismiss Plaintiffs' consumer protection claims is denied.

## IV.   CONCLUSION

For the foregoing reasons, the Court DISMISSES Count XII of the SAC, with leave to amend.  The Court DENIES Defendant's Motion as to the remainder of Plaintiffs' claims.  Plaintiffs may file an amended complaint to cure the specific deficiencies identified in this Order.  The amended complaint, if any, must be filed within fourteen (14) business days from the date of this Order.  If Plaintiff elects not to file an amended complaint within fourteen business days, the SAC will serve as the operative complaint, excluding Count XII.

**IT IS SO ORDERED.**

DATED:  December 26, 2024

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE

-13-